IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jeffrey Dru Kies, by Mary Kies,                          Case No. 3:07CV1258
his Guardian
               Plaintiff

      v.                                          ORDER

City of Lima, Ohio, et al.,

             Defendant

    This is a case about allegedly excessive use of force by Lima, Ohio, Police Department officers. Plaintiff Jeffrey Dru Kies, by his guardian Mary Kies, brings a 42 U.S.C. § 1983 claim against Lima Police Officers Ricker and Green, and the City of Lima. He also raises state law claims of assault, battery and malicious prosecution against Ricker and Green. Kies alleges Ricker and Green used excessive force in effecting his arrest, thereby violating his Fourth Amendment rights. He holds the City of Lima liable under § 1983 for failing to discipline the officers.

    Pending is the defendant officers' and City's motion for summary judgment. [Doc. 38]. The officers assert qualified and statutory immunity in response to Kies' § 1983 and state law claims. The City denies liability, asserting that City policy or custom did not cause any alleged constitutional violations. Jurisdiction arises under 28 U.S.C. § 1331 and § 1367.

    For the following reasons I deny summary judgment to the officers on all claims except Kies' malicious prosecution claim, and grant summary judgment to the City of Lima.

1

**Background**

On April 30, 2006, Jeffrey Dru Kies was a patron of the Firehouse Bar in Lima, Ohio. At

approximately 1:00 a.m. he went to the patio area outside the bar, stood on a bench and peered over

the privacy fence that surrounded the patio. He had called his mother to pick him up from the bar,

and waited in the patio, peering over the fence, looking for her car. Kies suffered a brain injury in

2000, and since that time, his mother, Mary Kies, has served as his guardian.[1]

That night, Ricker and Green drove by the Fireside Bar, looking for an intoxicated driver

who had reportedly left another bar. As they drove by, the officers state they heard some type of

noise and saw Kies peering over the fence. They assert he was shouting "F*** you, pigs" at them

loudly.[2] The officers engaged in a verbal exchange with Kies, instructing him to quiet down and go

---

[1]Plaintiff claims that, due to his previous brain injury, he has poor memory. He cannot recall the incidents of the night of April 30, 2006. In his deposition, he stated he only remembered "waiting on [his] mom and a light in [his] eye, and then . . . waking up in the hospital." [Doc. 37].

[2]Kies has no recollection of yelling at the officers. Ryan Newland, Sr., another patron of the bar at the bar that evening stated in his deposition that he did not hear any shouting from the patio area. He remained inside the bar during this alleged incident, and said a jukebox was playing in the bar, though not too loudly. Newland does not refute the officers' contention that Kies was loudly screaming, but does call into question the level of Kies' disruptiveness when the officers drove by. The officers did not create or provide an audio recording of the events of the evening despite city policy requiring that the cruiser audio/video recorder record all activity during their tour of duty. Kies contends that the officers' failure to create and proffer an audio recording amounts to spoliation and calls for the inference that the evidence would have been harmful to them. Kies fails to make a spoliation claim here since he cannot show that the officers destroyed evidence. *U.S. v. Manns*, 277 Fed. Appx. 551, 558 (6th Cir. 2008) (defining spoliation as "the intentional destruction of evidence . . . presumed to be unfavorable to the party responsible for its destruction.").

I accept the officers' contention that Kies was loudly shouting profanities at them since plaintiff does not refute the officers' contention and Kies has no memory of the evening. *See Wysong v. City of Heath*, 260 Fed. Appx. 848, 856-57 (6th Cir. 2008) ("because the plaintiff could not dispute the testimony of the officers, [the court] would accept the officers' version of the events.").

2

inside the bar. Kies did not respond to their instructions and remained standing in the patio area. The officers directed their spotlight toward him, and shined it on him commanding him to go back inside the bar. He tried to block the light with his hand. He reportedly asked them to remove the light from his face.

The officers decided to arrest him for disorderly conduct. They parked, exited the car and entered the bar. They walked directly to the patio where Kies was standing on the bench by the fence.

Green entered the patio first, with Ricker behind him. Green testifies he loudly commanded Kies to put his hands behind his back, and turn around.[3] As they approached, Kies stepped down from the bench. The officers report he did not put his arms behind his back or submit them for handcuffing.

The officers used force to back Kies against the fence. While Kies was against the fence, Ricker struck him in the abdomen with his knee, and punched him in the face twice, with a closed fist. Kies fell forward and the officers pushed him back against the fence again, punching him several times. The officers pulled Kies on the ground, and Kies lay on his stomach on the ground, while the officers continued to apply force against him.

---

[3]In their police reports, Ricker and Green state that after they entered the patio they used force to pull Kies down from the bench. A video recording made by a surveillance camera contradicts this aspect of their reports. The officers recanted the statements from their reports in their depositions.

The officers claim they used these forceful tactics while Kies lay on the ground because he continued to thrash around and kept his arms under his body, refusing to produce them for handcuffing.[4]

While Kies lay on the ground, Green struck Kies twice with his baton on his leg. He then struck Kies' arm with the baton. Ricker applied a dry taser in stun mode[5] to plaintiff's back, and then to his neck.

The parties dispute the number of tasings Kies received. Plaintiff posits the videotape depicts four distinct flashes of light, each representing a tasing. Newland, a bar patron on April 30, 2006, testifies he witnessed the officers tase Kies three or four times.

Green asserts he was finally able to use his baton to pull Kies' arm up, and handcuffed him. Newland testifies Kies' arms lay limp and to his side and the officers reached over to the side and grabbed his arms for handcuffing.

The officers lifted Kies to his feet and supported him on both sides as they led him out of the bar to the cruiser. His ability to walk during this time is in dispute. Green contends Kies could walk, purposely went limp, and fell forward. He claims while they walked on the sidewalk Kies kicked his feet backwards striking Green, causing all three to fall.

---

[4]The officers' testimony contradicts that of Ryan Newland, Sr., a patron of the bar who witnessed parts of the arrest. Newland states Kies was unconscious when he fell to the ground, did not say a word, and was not moving. He also states Kies' arms lay limp on the ground to his sides but the officers continued to beat and tase him. Newland asked the officers why they were beating Kies, and told them that Kies was "a little slow in the head." According to Newland, the officers instructed him to go back inside the bar, and warned he would be "going to jail" if he did not obey their instructions. [Doc. 36].

[5]A dry taser means the taser is applied directly to the body, without the probes.

4

Ricker testifies he does not know whether or not Kies went limp on purpose, and that Kies did not kick him.[6] Newland states Kies could not walk, and the officers "dragged [sic]" him out of the bar. He explains Kies' feet "weren't really touching the ground." [Doc. 36]. The officers took Kies to the hospital where he was treated for injuries he sustained, allegedly after falling on his way to the cruiser. At the hospital he was kept in a four-point restraint on doctors' orders.

Kies' arrest took place over a span of about one minute and thirty-three seconds. The officers charged Kies with disorderly conduct and resisting arrest. The charges were later dropped.

Kies alleges Ricker and Green violated his constitutional rights by using excessive force to arrest him. He also holds the City of Lima liable, arguing that its failure to discipline the officers indicates ratification of their unlawful conduct and deliberate indifference to constitutional violations. Kies raises state law claims of assault, battery and malicious prosecution against the officers, arguing force used against him meets the elements of an assault and battery claim. He contends the failure to sustain any charge against him supports his malicious prosecution claim.

Ricker and Green assert qualified immunity, contending the use of force during Kies' arrest was reasonable in light of his resistance and non-compliance. They argue they violated no clearly established constitutional right. Similarly they assert statutory immunity in response to Kies' state law claims, arguing no exception to immunity applies to their conduct. The City of Lima asserts that any failure on its part to discipline Ricker and Green does not constitute implicit ratification indicative of deliberate indifference and, in any event, could not have caused their allegedly unconstitutional actions.

---

[6]Ricker is senior to Green. Green explains in his deposition that he knows Kies went limp on purpose because of his experience with other arrestees who have also gone limp on purpose. [Doc. 34].

5

## Standard of Review

I must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of informing the district court of its motion's basis, and identifying the record's portions demonstrating the absence of a genuine issue of material fact. *Id.* at 323. The nonmoving party then "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed.R.Civ.P. 56(e)). The nonmoving party cannot rest on its pleadings or merely reassert its previous allegations; rather, the nonmovant must show that there is more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of concrete evidentiary material in its position's support. *Celotex, supra*, 477 U.S. at 324.

In deciding the motion for summary judgment, I will accept the evidence of the nonmoving party as true, resolve all doubts against the nonmoving party, construe all evidence in the light most favorable to the nonmoving party, and draw all inferences in the nonmoving party's favor. *Eastman Kodak Co. v. Image Technical Services.*, 504 U.S. 451, 456 (1992). I shall rule in favor of summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue of material fact exists and the law entitles the movant to summary judgment.[7]

---

[7]*Scott v Harris*, 550 U.S. 372, 127 S. Ct. 1769, 1776 (2007) presents a caveat to the general summary judgment rule. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable court could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary

## Discussion

## 1. DVD Surveillance of Fireside Bar

A key component of Kies' case is a DVD recording of the events surrounding his arrest. Plaintiff retrieved the video from Fireside's surveillance camera. The DVD lacks audio, and some of the events are difficult to see due to the presence of an umbrella blocking from the recorder's view portions of the officers' actions and what Kies may or may not have been doing.

Defendants argue the video is inadmissible hearsay under Fed. R. Evid. 801 and cannot be considered for purposes of summary judgment. They assert the video has poor quality, no audio and an umbrella blocks some scenes. Defendants' contention fails.

A videorecording is admissible as a depiction of the scene it represents. Fed. R. Evid. 901. Defendants agree the video accurately displays the events it depicts. During their depositions, the officers identify themselves and admit that in at least one instance the videotape contradicts what they originally recorded in their police reports. The DVD, therefore acts as a "silent witness." Its lack of sound, or the presence of visual barriers in the video, affects the weight that the video receives, but not its admissibility. *U.S. v. Morris*, 2008 WL 3896014, at *3 (E.D. Tenn.) ("the quality of the video recording is ultimately an issue of weight, not admissibility."). I may, therefore, consider the DVD for purposes of this summary judgment motion. *See generally*, Carr & Bellia, *The Law of Electronic Surveillance*, *available at* Westlaw, ELECTRSURV § 7:58 (2009).

## A. Inconsistencies in Officers' Testimony

---

judgment." Defendants rely on *Scott* to argue the evidence as a whole blatantly contradicts the allegations raised by Kies. Their reliance on *Scott* is unwarranted. In *Scott*, a videotape blatantly contradicted testimony. In this case, Kies' allegations are not so blatantly contradicted.

7

Kies alludes to a number of inconsistencies between the officers' testimony and the DVD's depiction of events. Defendants argue the inconsistencies are not material, and do not create material issues of fact. The inconsistencies, however, detract from the officers' credibility. They are the functional equivalent of contrary testimony by the plaintiff as to the issues they cover.

Soon after the arrest, Ricker and Green wrote in their police reports that they forcefully pulled Kies down from the bench, and he resisted their efforts to pull him from the bench. In his report Green wrote, "I grabbed Kies by the arm and he pulled away from me. I pulled Kies down off of the bench and he violently jerked his arm away from me." [Doc. 34].

Ricker wrote:

Officers then went into the bar and into the open courtyard where the defendant was and told he was under arrest and to step down from his ledge, but he again refused. Officers tried to pull the def down off of the ledge but he started thrashing around in an attempt to free himself from officers. Officers did finally pull defendant down and a struggle ensued.

[Doc. 35].

The video surveillance contradicts the officers' remarks in their report. The DVD shows Kies independently stepping down from the bench as the officers approached him in the patio. Both officers admit in their depositions that they did not pull him down from the bench. Their reports, in other words, were false – though presumably written shortly after the incident, when it would have been most fresh in their minds and memories.

Ricker followed Green into the patio area. Green testifies he loudly commanded Kies to put his hands behind him, and to turn around. In his report, Ricker states "the officers then went into the bar and into the open courtyard where the def. was and told he was under arrest and to step down

from the ledge, but he again refused." *Id.* In his deposition, however, Ricker states he followed Green but did not hear Green's commands to Kies.  *Id.*

Ricker testifies that he punched Kies "a total of two times in the face." [Doc. 34]. The video depicts Ricker punching him twice on two occasions during the encounter.[8]

Green testifies he never punched Kies. He does not mention punching him in the police report, and he denies punching him during his deposition. The video shows Green punching Kies after Ricker punched him twice, when Kies was backed up against the fence.[9]

The video also calls into question the officers' testimony regarding their use of the taser. Ricker states he deployed the taser twice in "stun mode," once against Kies' back, and once against his neck. The video, however, depicts several flashes of light, that the jury might find emanated from the taser, as plaintiffs suggest.[10] Kies notes defendants did not proffer the taser downloads from each of their weapons that records the time and duration of taser applications. Newland's testimony that he witnessed the officers tase Kies three or four times supports the inference from the flashes of light shown on the video. [Doc. 36].

Moreover the video does not show Kies thrashing around from side to side after the officers pulled him to the ground. Again, though grainy, the video supports Newland's testimony that Kies was motionless when the officers pulled him to the ground. Newland testifies Kies was unconscious when he fell to the ground, stomach first. Newland reports he witnessed Kies' eyes closed, and that as Kies lay on the ground his arms lay limp to his sides, not under his body as the officers contend.

---

[8]DVD at 5:13-14; DVD at 5:23

[9]DVD at 5:23

[10]DVD at 6:06; 6:11; 6:17; 6:23

He also states that when the officers lifted him to his feet, "his eyes looked like they were rolling

back in his head. . . . He was still unconscious. . . His pupils were rolling back in his head. . ." *Id.*

The officers deny Kies lost consciousness.

At the very least – even setting aside that portion of the police report which admittedly is

untrue regarding the outset of the incident – there are sufficient inconsistencies between what the

officers claim, the video can be seen depicting and Newland says he saw to send the case to the jury.

### 2. Qualified Immunity

Officers Ricker and Green assert qualified immunity in response to Kies' § 1983 claims. A

successful assertion of qualified immunity enables defendants in § 1983 cases to avoid standing trial

or enduring the other burdens of litigation. *Harrison v. Ash,* 539 F.3d 510, 514 (6th. Cir. 2008).

To determine whether to grant summary judgment on the basis of qualified immunity, the

Sixth Circuit employs a multi-pronged approach. I must examine: 1) whether, after viewing facts

in the light most favorable to the plaintiff, the plaintiff has shown that defendant's conduct violated

plaintiff's constitutional or statutory rights, and 2) whether those rights were clearly established at

the time of the alleged violation. *See, e.g., Phillips v. Roane County, Tenn.*, 534 F.3d 531, 538-39

(6th Cir.2008); *Curry ex rel. Curry v. Hensiner*, 513 F.3d 570, 576 (6th Cir.2008). The Sixth Circuit

sometimes adds another inquiry: 3) "whether plaintiff has alleged sufficient facts, and supported the

allegations by sufficient evidence, to indicate that what the official allegedly did was objectively

unreasonable in light of the clearly established rights." *Id.* "The third inquiry impacts the analysis

when *despite* the violation of a clearly established constitutional right, the official's conduct was

objectively reasonable, and so should still enjoy qualified immunity." *Id* [emphasis in original].

In sum, I must determine whether "the conduct complained of constitute[d] a clearly established violation of statutory or constitutional law at the time that it occurred[.]" *Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1174 (6th Cir.1988). *Cf. Pearson v. Callahan*, ____ U.S. ____, 129 S.Ct. 808, 818 (2009) (finding the established sequence of qualified immunity analysis beneficial and often appropriate, but stating that it should "no longer be regarded as mandatory").

### A. Violation of a Constitutional Right

Kies alleges Ricker and Green violated his Fourth Amendment rights by using excessive force while arresting him. The Fourth Amendment "guarantees citizens the right to be secure in their persons . . . against unreasonable . . . seizures of the person." *Graham v. Conner*, 490 U.S. 388, 394 (1989). I therefore analyze these claims under the Fourth Amendment's "objective reasonableness standard." *Id.* at 388. This analysis requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396.

To determine the reasonableness of the use of force, I must consider the totality of the circumstances, judged "from the perspective of a reasonable officer on the scene." *Id.* "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving about the amount of force necessary in a particular situation." *Id.* I therefore examine the totality of the circumstances, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting or attempting to evade arrest by flight." *Id.*

### i. Severity of the Crime

11

Kies contends police used excessive force against him, especially considering his alleged crime. Ricker and Green observed him loudly shouting profanities at them while they drove by in their cruiser. The alleged incident took place after midnight while Kies stood alone within a private fenced-in area of a bar. No one complained to the officers of Kies' alleged loudness or disruptiveness. The officers passed him while looking for a drunk driver. Newland, a bar patron, testifies he did not hear any noise from Kies. The first noise he heard occurred when the officers forced Kies against the fence in the patio.

Defendants describe plaintiff's yelling as loud and profane, and assert his non-compliance with their repeated instructions to go back inside the bar presented a volatile situation. They note Kies continued to disobey their commands to go inside the bar even after they shined their spotlight onto his face.

"The crime of disorderly conduct generally is not a violent or serious crime, and this fact weighs in favor of using less force in arresting [someone for such conduct]." *Thacker v. Lawrence County*, 182 Fed. Appx. 464, 472 (6th Cir. 2006) (finding officers' actions in wrestling resistant defendant to the ground constitutional despite the fact they arrested him for disorderly conduct). Here, Ricker and Green determined to arrest Kies for disorderly conduct. Kies' disorderly conduct, in essence, amounted to: 1) loudly swearing at police officers from the patio of a bar as they drove by in their cruiser, and 2) failing to go back inside the bar when ordered to do so. The jury could find that Kies presented no threat to anyone, and his crime was not severe. *See also Shreve v. Jessamine County Fiscal Court*, 453 F.3d 681 (6th Cir. 2006) (rejecting officers' qualified immunity claim and noting Shreve's alleged crime - second degree bail-jumping- carries no connotation of violence).

**ii. Whether the Suspect Poses a Threat to the Officers or Others**

12

The officers claim Kies posed a threat because he refused to obey their order to produce his hands for handcuffing. The officers, however, had complete control over the circumstances of Kies' arrest. Kies did not act violently towards the officers when they arrived on the patio. The officers state he thrashed around to avoid being handcuffed. The officers do not allege that he directed any type of physical aggression toward them during the arrest, nor does the video or the testimony of Newland support such allegations. The jury could find that Kies did not pose a threat to the officers, or to anyone else.

Genuine issues of material fact exist regarding whether the amount of force used against Kies was warranted in light of the purported risk he presented. Newland testifies that when Kies fell to the ground he was unconscious. He states that after the officers threw Kies to the ground, he "was laying there unconscious and they started beating him." [Doc. 36]. According to Newland, after Kies fell to the ground he "wasn't moving or talking or nothing. His eyes were closed." *Id.* Despite his condition, Newland contends the officers beat and tased him. Newland also asserts Kies' arms lay limp on his sides while he lay on the ground. The officers picked up his hands to handcuff them.

Newland's testimony contradicts that of the officers, who claim Kies continued to thrash and resist the officers' efforts to handcuff him after he fell to the ground. He refused, in particular, to produce his hands for handcuffing, and instead kept them under his body. The officers justify their forceful tactics because of Kies' allegedly persistent resistance throughout the entire arrest.

If Newland's testimony is true, the officers exerted undue force against a passive, non-resistant defendant. Defendants assert Newland's testimony regarding Kies' consciousness does not create a genuine issue of material fact and does not provide sufficient foundation for a lay person's opinion under Fed. R. Evid. 701.

13

Rule 701 requires lay opinion to be "a) rationally based on the perception of the witness; b) helpful to a clear understanding of the witnesses' testimony or the determination of a fact in issue; and c) not based on scientific, technical or other specialized knowledge." Defendants claim Newland's testimony lacks a rational basis because the reason for his belief regarding Kies' consciousness is that his eyes were closed as he fell to the ground.

Newland, however, gave additional reasons for his statement regarding Kies' consciousness. Newland states after Kies fell to the ground, Kies remained motionless, and his arms were limp and to his side. He adds that when the officers lifted Kies up, "his eyes looked like they were rolling back in his head. He was still unconscious. . . . He had a blank . . . His pupils were rolling back in his head, and they were starting to shut again." He notes that Kies could not walk.

Genuine issues of material fact therefore exist as to whether or not police used excessive force against Kies after gaining control over him and after Kies stopped resisting.

### iii. Whether he is Actively Resisting Arrest or Attempting to Evade Arrest by Flight

The officers argue that Kies actively resisted arrest. His active resistance necessitated the level of force they used against him. Kies allegedly resisted arrest by failing to produce his arms for handcuffing. This Circuit, however, has held that resisting handcuffing constitutes "passive resistance" and warrants lesser force. *See, e.g.,* *Shreve v. Jessamine County Fiscal Court*, 453 F.3d 681, 687 (6th Cir. 2006) (denying officers summary judgment on Shreve's § 1983 excessive force claims, and stating, "Policeman may not strike an arrestee lying on the ground with a stick for about fifteen minutes, nor may they 'jump' up and down on her back repeatedly with a knee - not even if she refuses to produce her hands for cuffing.").

14

In *Shreve*, the Sixth Circuit deemed plaintiff's resistance to arrest, and specifically, her refusal to produce her hands for cuffing, as "passive resistance." *Id.* It acknowledged that police officers can use force to produce compliance and to end an arrestee's passive resistance. It stated the officers acted reasonably in using pressure point submissions and placing a knee on Shreve's back to prevent her from "wriggling free." *Id.*

The Sixth Circuit, however, also noted that excessive force could not be used to oppose passive resistance. Despite allowing for the use of pressure points to overcome plaintiff's passive resistance, the court held:

> [I]nterest in an arrest [could not] have justified jumping up and down on her back with a knee or striking her about the knee and shoulders with a stick, for around fifteen minutes. These alleged actions go so far beyond forcing Shreve to produce her hands that no reasonable policeman could see them as nonexcessive, not even in the heat of the situation.

*Id.* at 687.

In this case, a genuine issue of material fact exists regarding the reasonableness of the officers' actions after getting Kies to the ground. First, it is not certain whether Kies continued his passive resistance after falling to the ground, stomach first. Second, it is not clear whether his passive resistance warranted the repeated beatings and tasings that he received on falling to the ground, after already having been kneed and punched by the officers several times.

There is a genuine issue of material fact regarding whether or not Kies "did [any]thing after [he] had been placed on the floor that would cause a reasonable officer to fear for anyone's safety." *Id.* at 687. *See also, Leary v. City of Pontiac*, 2008 WL 718287 (E.D. Mich.) (finding genuine issue of material fact regarding the alleged use of excessive force against plaintiff. Court noted plaintiff resisted defendants' efforts to handcuff him, but was "unarmed, visibly inebriated and disoriented,

15

and although persistent, [his resistance] was limited primarily to pushing and pulling to keep his hands away from [the officers]." It also observed defendants "were only attempting to effect a misdemeanor arrest" and concluded "jurors could disagree regarding whether defendants' eventual response with their fists and nightsticks was proportional to his resistance, and therefore, reasonable").

Finally, Kies did not present a flight risk. Kies remained alone and unarmed in a fenced-in patio.

In light of the facts alleged, and the disputed issues of material fact, a reasonable jury could find Ricker and Green used excessive force in violation of Kies' constitutional rights.

### B. Whether the Right was Clearly Established

After finding sufficient evidence to show that defendant's conduct violated plaintiff's constitutional rights, I must determine if that right was clearly established. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). *Cf. Pearson, supra,* 129 S.Ct. at 818. Justice Scalia explained the "clearly established" test in detail:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in light of preexisting law the unlawfulness must be apparent.

*Anderson, supra,* 483 U.S. at 640.

I must determine whether in light of preexisting law, the unlawfulness of defendants' actions would be apparent to a reasonable official. The case law must be clear, "such that the contours of the rule are sufficiently clear to put a reasonable official on notice that what he is doing is probably unlawful." *Sheets v. Mullins*, 287 F.3d 581, 589 (6th Cir. 2002).

16

Defendants argue that even if a violation of a constitutional right can be shown, plaintiff cannot allege the right is clearly established. Defendants explain they used force in response to Kies' resistance to arrest "under uncertain and potentially volatile circumstances."

"[E]xcessive use of force [is an] objectively unreasonable [action] in light of clearly established law." *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 2004). Nothing in the facts alleged or asserted by either party indicates the circumstances surrounding the arrest were potentially volatile. Both officers had Kies in their physical control. Kies was alone, unarmed and, at most, resisting their attempts to handcuff him, as opposed to acting aggressively. Moreover, the officers had him on the ground, and a genuine issue of material fact exists regarding whether or not officers used force against him after he ended his resistance. Kies therefore alleges sufficient facts to show that defendants' conduct was unreasonable in light of clearly established law.

A reasonable jury could therefore conclude that the officers violated Kies' constitutional rights in effecting his arrest, and that those rights were clearly established at the time of their unconstitutional conduct. *See also, Lustig v. Mondeau*, 211 Fed. Appx. 364, 371 (6th Cir. 2006) (finding plaintiff could demonstrate unreasonable and excessive force where "plaintiff . . . alleged . . . [defendant] repeatedly and gratuitously applied additional force . . . against an individual who posed no threat to safety, did not attempt to flee, offered at most passive resistance to the officers, and was already under the officers' physical control. . .").

### 3. Municipal Liability

Kies brings a § 1983 claim against the City of Lima. He bases the municipality's liability on their "failure to supervise." He alleges the City's failure to discipline Ricker and Green amounts to an implicit ratification of their conduct and deliberate indifference toward unconstitutional behavior.

Defendants point out that the City's failure to discipline the officers could not have caused the officers' allegedly unconstitutional actions. Kies does not dispute the officers' assertion that they received use of force training annually. Nor does he allege the training itself was inadequate, or resulted in unconstitutional practices.

Municipalities face liability under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 690 (1977). A municipality can also be held liable for constitutional deprivations caused by adherence to "governmental custom even though such a custom has not received formal approval through the body's official decision making channels." *Id.* at 691. The municipality policy or custom must be causally connected to the constitutional violation. *Id.*

Kies fails to meet this standard in asserting his § 1983 claim against the City of Lima. He does not allege that City policies authorized an unconstitutional use of force. The City's failure to discipline Ricker and Green does not raise a genuine issue of material fact regarding the City's liability. Failure to discipline two officers regarding one alleged incident does not constitute "implicit ratification" indicative of a general policy of deliberate indifference toward unconstitutional conduct. *Cf. Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1247-48 (6th Cir. 1989) (finding failure to discipline officers who neglected paraplegic prisoner evidence of deliberate indifference where sheriff knew and had reason to know that paraplegic would likely not receive adequate care. In *Leach*, evidence existed that sheriff knew that other paraplegic or "physcially infirm inmates . . . had been similarly mistreated.").

18

Kies, moreover, does not explain how the failure to discipline the officers after their allegedly excessive use of force against him caused their alleged constitutional violations. *See, e.g., City of Oklahoma v. Tuttle*, 471 U.S. 808, 824 (1985) (finding plaintiff must show a "causal connection between the policy and the alleged constitutional deprivation."). Because Kies cannot demonstrate the officers acted unconstitutionally pursuant to an official policy or custom, I grant summary judgment to the City of Lima.

### 4. State Law Claims

### A. Immunity re. State Law Claims

Kies alleges state tort claims of assault and battery, and malicious prosecution against Ricker and Green.

Defendants assert immunity under O.R.C. § 2744. This section provides immunity from liability "in connection with all governmental and proprietary functions performed by a political subdivision and its employees. . ." The law, however, contains exceptions to immunity, including an exception if the "employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." O.R.C. § 2744.03(A)(6)(b).

Kies claims defendants acted in a "wanton and reckless manner" while arresting him, and therefore, the officers cannot assert immunity in response to his state law tort claims.

In Ohio, wanton and reckless conduct is:

> perversely disregarding a known risk, acting or intentionally failing to act in contravention of a duty, knowing or having reason to know of facts which would lead a reasonable person to realize such conduct creates an unreasonable risk of harm substantially greater than the risk necessary to make the conduct negligent.

*Chesher v. Neyer*, 477 F.3d 784, 797 (6th Cir. 2007).

19

Kies alleges sufficient facts to demonstrate that the officers acted in a "wanton and reckless manner" in carrying out his arrest. Kies alleges officers used excessive force and knew and had reason to know that their conduct created "an unreasonable risk of harm" to Kies. The officers, therefore are not entitled to immunity.

### B. Assault and Battery

In Ohio, assault is:

> the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably placed the other in fear of such contact. The threat or attempt must be coupled with a definitive act by one who has the apparent ability to do the harm or to commit the offensive touching. An essential element is . . . that the actor knew with substantial certainty that his or her act would bring about harmful or offensive contact.

*Smith v John Deere Co.*, 83 Ohio App. 3d 398, 406 (Ohio App. 10 Dist 1993).

Battery is "an intentional contact with another that is harmful or offensive." *Love v. Port Clinton*, 37 Ohio St. 3d 98, 99 (1988).

Kies alleges sufficient facts to support his claims for assault and battery. *See* discussion *supra* Part 2.

### C. Malicious Prosecution

To state a claim for malicious civil prosecution in Ohio, Kies must allege: "1) malicious institution of prior proceedings against plaintiff by defendant; 2) lack of probable cause for filing of prior lawsuit; 3) termination of prior proceedings in plaintiff's favor; and 4) seizure of plaintiff's person or property during course of prior proceedings." *Robb v. Chagrin Lagoons Yacht Club*, 75 Ohio St. 3d 264 (1996).

Defendants claim Kies cannot allege the second element, lack of probable cause, because Ricker and Green had probable cause to arrest him for disorderly conduct. Kies contends defendants

20

charged him with disorderly conduct and resisting arrest, but these charges were eventually dismissed. He adds that when officers learn a person they are charging with resisting arrest was suffering from a medical condition at the time, and they continue to prosecute that person,  the officers can be held liable for malicious prosecution. *Spires v. City of Lancaster*, 28 Ohio St. 3d 76 (1986) (sustaining judgment for plaintiff on malicious prosecution claim but holding punitive damages could not be assessed against the municipality).

Here, Kies fails to allege sufficient facts to support his argument that the officers lacked probable cause for charging him with disorderly conduct and resisting arrest. Despite the fact that the charges were dropped, plaintiff cannot contest the officers' assertion that Kies' was disruptive and disorderly when the officers drove by. Kies does not argue he obeyed the officers' repeated instructions to go back inside the bar. Nor does Kies contest he initially offered at least passive resistance to the officers' attempt to arrest him, since Kies has no recollection of the night, and no other witnesses observed the initial encounter between the parties.

Newland testifies he told the officers that Kies was "slow in the head" during Kies' arrest. It is not clear the officers knew of Kies' medical condition at the time of the arrest. Besides Newland telling them Kies was "slow in the head," Kies offers no evidence to support his contention that the officers knew of his condition and therefore should have refrained from pressing charges for resisting arrest. Because Kies fails to demonstrate lack of probable cause for pressing charges against Kies for disorderly conduct and resisting arrest, I grant the officers summary judgment on the malicious prosecution claim.

### Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT

1. Defendant officers' motion for summary judgment [Doc. 24] be, and the same hereby is

granted on Kies' malicious prosecution claim, and denied as to all other claims.

2. City of Lima's motion for summary judgment be, and the same hereby is granted.

So ordered.


s/James G. Carr
James G. Carr
Chief Judge